Sutliee, J.,
dissenting. The statute of February 10, 1831, provided, “ That if the officer, by virtue of any writ of fieri facias, issued by any court of record in this state, shall levy the same on any goods and chattels claimed by any person other than the defendant, it shall be the duty of said officer forthwith to give notice, in writing, to some justice of the peace of the county, in which shall be set forth the name of the plaintiff and defendant, together with the name of the claimant, and at the same time he shall furnish the said justice of the peace with a schedule of the property claimed,” etc.; and it is thereby made the duty of the justice, upon receipt of such notice and schedule, to immediately make an entry of the same on his docket, and issue a writ of venire facias to the sheriff or any constable of the county, commanding him to summon five disinterested men, having the qualifications of electors, to appear before him, the justice, at a time named, not more than three days after the date of said writ, to try and determine the right of the claimant to the property in controversy; and it is also made the duty of *113 the claimant to give two clays’ notice, in writing, to the party for whose benefit the execution Avas so levied, his agent or attorney, if Avithin the county, of the time and place of trial. The jury are to be sworn and a trial had, and a verdict rendered upon the evidence ; and if the jury find the right to be with the claimant to the property or any part of it, they are to so express their finding; and if they find against his claim, they are to so express their finding; and the justice is to render judgment for costs against the claimant or other party Avho shall fail on said trial, and in favor of the adverse party; and that the property be restored or held according to such verdict. The act also contains the following provision : “ Provided ■ that such judgment for the claimant as aforesaid, shall be a justification to the officer in returning nulla bona to the writ of execution, by virtue of which the levy had been made, as to such part of the goods and chattels as were found to belong to the claimant.”
In the case of Patty v. Mansfield, under this statute, at the December term, 1838 (8 Ohio Rep. 369), the supreme court to some extent gave a construction to this act, which I admit is entitled to respect in the construction to be given to the present act in this cause. The facts of that case, as they are to be gathered from the opinion of the court pronounced by Judge Hitchcock, were simply these. The plaintiff, at the time of the levy, had preferred to the sheriff his claim to the property and solicited a trial of the claim in the mode prescribed by that statute; had submitted the case upon the proof he thére made to the triers and the judgment of the court, and the verdict and judgment was in favor of the levy of the officer and against the claimant’s right. And Patty' thereupon sued out a writ of replevin against Mansfield, and replevied the goods. The sheriff pleaded.to the declara' tion by special plea in bar, the proceedings and judgment of the justice in the trial of the right of property so had before said justice. In that case a regular trial was had, and a verdict and judgment was entered against.the plaintiff, and still remained in full force.
In his remarks upon the statute, Judge Hitchcock says: *114 “ We suppose that in the enactment of this law the legislature had two objects in viewr. One was to enable an individual whose property had been, through mistake, levied upon, to recover the possession in a summary manner. The other, and the principal, was to furnish protection to an officer of the law, who should make a mistake in the discharge of his duty. This latter object would not be effected, if after the trial of the right of property, and a decision against the claimant, the officer could still be subjected to an action at his suit. Beside no person is bound to claim his property under this statute. He may at once commence his action at common law against the sheriff or other officer, and if he prefer the statutory remedy, he ought to be concluded by it, so far at least as the officer is concerned.”
Independent of any remarks of the judge upon the statute outside of the case before the court, the opinion in the case of Patty v. Mansfield, went this extent and no further — that where a claimant of property levied upon by a sheriff, had himself invited and prosecuted a trial of his right under the statute,- while a verdict and judgment in his favor entitled him to a restoration of the property, a verdict and judgment against his right in such a case concluded him of his right of possession of the property as against such levy by the sheriff; and that in a second action instituted at common law to assert his right of property against the sheriff, the proceedings and judgment against his right in the former trial under the statute, which he had so voluntarily availed himself of, might be pleaded in bar by the sheriff to the action so afterward prosecuted in regard to the same alleged right of property.
But on the 8th of February, 1847, this statute of March 1, 1831, was amended, by providing that when the verdict should be in favor of the claimant, “ such jury shall also find and return in their verdict the value of the property so found by them to be the property of the claimant; and if the plaintiff in execution shall, at any time within three days, after such trial, tender to the sheriff, or other officer having such property in his custody on execution, a bond with good and *115 sufficient sureties, payable to such claimant, in double the amount of the value of such property, conditioned for the payment of any final judgment which such claimant may recover against the plaintiff in execution in any court having jurisdiction thereof, for damages sustained by reason of the detention and sale'of such property; in such case the sheriff or other officer shall deliver said bond to the claimant, and proceed to sell such property as if no such trial of the right of property had taken place, and shall not be liable to the claimant therefor.” And the statute of 1831, with this amendment of 1847, is adopted and expressed by sections 427 and 428 of our code of civil procedure, substantially as expressed by the statutes of 1831 and 1847, repealed by the act of March 11, 1853, establishing the code of civil procedure.
The present case arose under this amendatory clause of the old statute, as expressed in sec. 428 of the code. The question is a different one, one arising under a different statutory provision, and upon a different state of facts from that presented and decided in the case of Patty v. Mansfield.
In this case, the record does not show that the claimant voluntarily or by consent, had the trial of the right of property under the statute ; the summary proceedings and trial may have been in invitum as to the claimant, for aught that appears in the record before us.
And in this case the record shows the verdict of the jury and the judgment of the justice to have been in favor of the claimant; it is thereby found by the jury and adjudged by the justice in that case, that the claimant is the rightful owner and entitled to the possession of the goods; so that the same could not be pleaded in bar, as in the case of Patty v. Mansfield.
There are certain familiar rules applicable to the construction of statutes which, it seems to me, have some application to this ease. One statute, as well as one part of the same statute, must be so construed with regard to other statutes, or other parts of the same statute, that the whole may, if rea *116 sonably possible, stand together in harmony — ut res magis valeat, quam pereat.
Again: it is a general rule, that a statute derogatory of rights at common law, can not be extended beyond the letter of the statute; such statutes are to have a strict construction, most favorable to the existing right.
How stands the case then upon the record ?
The plaintiff has brought his action of replevin; a common law action which has always existed since the organization of the state; and which was never regulated by statute until 1824. And the statute of January 2, 1824, which prescribed the method of procedure in replevin, provided, “ That every person shall have right to replevy his goods or chattels which shall be unlawfully taken from his possession and detained,” etc. And the same right had from that time to the present been in like manner declared by statute law of the state.
Within the letter of this statute, and which had not only existed long before but was re-enacted at the same time with the amendatory statute (sec. 428), this plaintiff has brought this action of replevin. He has brought it to recover “ his goods unlawfully taken from his possession.” If the goods are his, and were unlawfully taken from his possession, then I maintain the plaintiff is within the spirit, as well as the letter of this statute. And the action of replevin thus given by the statute, and so long recognized as the appropriate one, may very possibly be the only one to secure him the constitutional provision, that “All courts shall be open, and every person for an injury done him in his . . . goods . . . shall have remedy by due course of law; and justice administered- without denial or delay.” Constitution of Ohio, Art. 1, sec. 16.
If, then, this statute giving to a person the right to replevy his goods unlawfully taken from him, and the amendatory clause of the claimant act, enacted at the same time, could not both consist, I insist that the amendatory clause, being, as it would then be, in derogation of this common law action, and in derogation of a right secured by the constitution, ought to *117 give way, and not the replevin statute, when the two are in conflict.
But I maintain that the provision of the claimant act is susceptible of such a reasonable construction as will at least secure what Judge Hitchcock admits in his opinion to have been the principal object of the legislature in its enactment to-wit: —protection to the officer of the law, who should make a mistake in the discharge of his duty.
Only let it be now conceded that the protection of the officer is the leading object of the statute, and it must be admitted that he has the right to invoke its aid in any appropriate case for the protection intended thereby. And this must necessarily give the sheriff the privilege to have the summary trial for his own safety, although it may be a proceeding in invitum, as to the claimant.
Suppose, for example; the sheriff after making a levy upon a store of goods, be informed by a third person that he claims them by a recent purchase; and threatens to hold the sheriff responsible for the full value thereof in case of his selling. And the sheriff is also threatened with amercement by the judgment plaintiff in case of his discharging the goods. Now, the claimant might prefer his right of action against the sheriff to the goods and refuse to ask a trial; but the sheriff must either forego the benefit of the statute, and certainly incur from one of the parties a liability for the price of the goods, or he has the legal right to call upon the justice for the benefit of the statute. In such a case, therefore, I think both the language and spirit of the statute would authorize the sheriff to protect himself by'this summary trial contemplated by the statute for his protection. Indeed, to hold the contrary, that the benefit of the statute could only be had at the instance of the claimant, would make the principal object ofj the statute to be the interest or convenience of the claimant, and would in fact exclude the sheriff from all benefit under the statute, except the incidental advantages he might occasionally derive from a trial, which the claimant for his own benefit should happen to institute or require in some particular case under the statute.
*118 But let us recur to the language of the statute relied upon in this case to bar the plaintiff of his right of action.
Sec. 428. “ If the jury shall find the property or any part thereof to be in the claimant, and the plaintiff in execution shall, at any time within three days after such trial, tender to the sheriff or other officer having such property in his custody on execution, an undertaking with good and sufficient sureties payable to such claimant, in double the amount of the value of such property as assessed by the jury, to the effect that they will pay all damages sustained by reason of the detention or sale of such property, then the sheriff or other officer shall deliver said undertaking to claimant, and proceed to sell such property as if no such trial of the right of property had talcen place, and shall not be liable to the claimant therefor.”
On the same day the legislature also enacted this statute : Sec. 175. “An order for the delivery of property to the plaintiff shall be made by the clerk of the court in which the action is brought, when there is filed in his office an affidavit of the plaintiff, his agent or attorney, showing, 1st. A description of the property claimed : 2d. That the plaintiff is the owner of the property, or has a special ownership or interest therein, stating the facts in relation thereto, and that he is entitled to the immediate possession of the property,” etc.
Now the material inquiry is, can these two statutes, passed at the same time, or rather, these two sections of the same act, be so construed that both may have effect ? I insist that they can.
We have already seen that section-428 contains provisions, taken in its largest and most comprehensive sense, derogatory of the common law right, if not of the constitutional right, of the plaintiff, and might.be entirely inconsistent with section 175. I therefore here ask the application of those familiar rules, that section 428 be restricted and limited to the strictest literal interpretation consistent with the language used, and so as to make its provisions harmonize with section 175.
And in making this construction, we not only have the right, but it is our duty, to regard the admitted fact, that the *119 principal object of tbe statute of 1831, section 427, was to give a reasonable protection to the sheriff. And that without the amendment thereto expressed by section 428, it did give him, by the interpretation I have already insisted upon, full protection. The sheriff, then, being protected by section 427, without the provisions of section 428, it is for that reason, as well as in the provisions thereby expressed, shown clearly that section 428 was not passed for his accommodation. And the very language of the provision shows that section 428 was passed for the benefit, and solely for the benefit, of the judgment plaintiff; and he is only permitted to exercise it upon executing a bond of indemnity to respond for all damages consequent upon the same.
I admit, the bond might have been required to be more comprehensive, or have been made payable to the sheriff, under our former practice; and perhaps under our present practice it would have been desirable, as more explicitly including the sheriff in the indemnity intended by the bond.
But when the bond of indemnity is executed and delivered by the party against whom the verdict and judgment have been so rendered in the claimant trial, what then is the provision of this statute ? that the judgment rendered against .the judgment plaintiff, to restore the property to the rightful owner, shall be rendered in his favor and against the claimant ? Not at all; but simply this — that the plaintiff having substituted his indemnity in place of the protection provided by the statute, and thus secured to himself by the sheriff, this indemnity of the party shall be accepted by the sheriff in lieu of the claimant trial — and that such trial shall all go for naught. The object of the claimant proceedings being merely for the safety of the sheriff, the legislature has just consented, for the benefit of the party for whose interest is the levy, that, upon his furnishing indemnity to the sheriff, and giving him all that the statutory proceeding has done, that it is but reasonable that the sheriff accept it, and abandon the- statutory protection so acquired by the judgment. Hence the statute provides that upon the bond of indemnity being so executed by the plaintiff in execution, he shall not be at all *120 affected by tbe summary trial, but the same shall be held for naught. This .is the language requiring the sheriff to forego his statutory right to return the property — that after the perfecting of the indemnity of the party, the sheriff shall “ proceed to sell such property as if no such trial of the right of property had taken place, and shall not be liable therefor ”
Now, we have only to ascertain what would be the rights of these parties, “if no such trial of the right of property had taken place,” to understand the right of the plaintiff to sustain this action.
What then would have been the situation and rights of this plaintiff and the defendant, “ if no such trial of the right of property had taken place;” but the indemnity had been given to the sheriff at the time of the levy, and he, satisfied with the indemnity, had not invoked the statutory protection of the claimant trial ? No one can doubt that section 175, of the same act of the legislature giving the plaintiff unconditionally this right of an action of replevin, under the circumstances-shown, would have full effect; and the plaintiff be entitled, by force of it, to this action.
Rut it is said, that section 428 not only provides that the sheriff shall proceed to sell the property “ as if no such trial of the right of property had taken place;” but also adds— “ and shall not be liable therefor.” I understand, by this-phrase, no more than that the sheriff shall not be liable as a tort feasor, in regarding the judgment as a nullity, and refusing to return the property to its adjudged owner; but proceeding to the sale, the same as if no claim had been made. This holding, I am free to admit, would exempt the sheriff from the actions of tort, trespass, and tro.ver, but in this state, of thje case,.the owner would not be left remediless. If he was willing to accept damages instead of the property, he would have his right of action therefor against the judgment plaintiff and the sureties by whose procurement the sheriff had acted; or if he preferred the property itself, he would still have the right of this action of replevin. And if there were no other provisions of the statute, the language of section 428 only requires that the plaintiff shall be restricted to *121 nominal damage — that he shall not recover damages of the sheriff for an unlawful detainer of the property from the rightful owner.
But it is provided, by another section of the same act, as follows:
“ Sue. áá. In an action against the sheriff or other officer, for the recovery.of property taken under an execution, and replevied by the plaintiff in such action, the court may, upon application of the defendant, and of the party in whose favor the execution issued, permit the latter to be substituted as the defendant, security for the costs being given.”
Now, it can hardly be presumed that the plaintiff in execution, after having given bond and security to pay all damages, would ever fail to be desirous of vindicating the title to the property, and so, at once avail himself of this statute. And the judgment would in such a case be in the usual form for full damages against him for the detainer, in case of a recovery by the claimant in replevin.
Again, it is provided by section 85, “ Any person may be •made defendant who has, or claims, an interest in the controversy, adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein.” And the judgment plaintiff, being the person for whose interest, and at whose instance the goods were retained, and haying undertaken to pay any damages to which the claimant should become entitled for such cause of action, he might, perhaps, either before or after judgment,in inviium, be made a party defendant, and subjected to the payment of the damages resulting from such detention of the property at his instance.
This view of the several sections gives effect to all the several provisions of the code, suffers them all to stand each in harmony with the other parts of the same act, ut res magis valeai quam fereat.
Nor is this construction inconsistent with the language, “ shall not be liable therefor.” The word “ therefor” relates to the act prescribed, as the sheriff’s duty upon receiving the personal indemnity contemplated. In such a case the sheriff *122 shall — this is the language — “ proceed’ to sell such property as if no such trial of the right of property had taken place, and shall not be liable therefor. ” Shall not be liable for proceeding to sell the property; that is the meaning-and the only meaning of the language used. Something must be implied to give the provision a more extensive meaning.
Again, it is to be remarked, there is nothing said of the party claimant. The provision is one of indemnity to the sheriff, he shall proceed and sell, and shall not be liable therefor. But will it be pretended that if a third person make the affidavit required by the code, that any item of the property about to be sold is his, and that he has the right of possession, the right of action by replevin is to be barred such third person, by the provision that the sheriff “ shall not be liable ” for failing to return the property to the first claimant, and proceeding to sell the same? And yet this absurd conclusion would seem to follow, from a construction of the language to indemnify the sheriff from liability to an action of replevin in regard to the property. And why should- not the action of replevin in regard to the goods thus directed to be sold by the sheriff the same as if no trial of the right of property had been had, be prohibited from one claimant as well as another ? It is true, in the case before us, the plaintiff in the replevin suit has had a finding by a jury, and a judgment of the court that he is the owner, and entitled to the possession of the property; but that of itself can hardly make his title to the property of less validity than that of a claimant who has not shown, and perhaps does not possess any evidence of title. In the case of the first claimant the verdict and judgment were in his favor, and if of validity was conclusive to show he is entitled to the property; and if, as the statute provides, on the party giving indemnity to the sheriff, the statutory proceeding so resulting in favor of the claimant, is to be set aside, and the sheriff to proceed to sell “as if no such trial ” had taken place — the two claimants would be precisely on the same ground.
But it certainly can not be pretended that the sheriff in such a case would not be hable to a suit in replevin by a *123 stranger whose property he had in possession without any process against the stranger for the same.
But the constitution of our state expressly provides that “ every person for an injury done him in his land, goods, person or reputation shall have remedy by due course of law; and justice administered without delay.” (Art. 1, sec. 16.) And the constitution of the United States provides, that no person shall be deprived of his property but by due process of law. (Art. 5 of Amendments.) The former constitution of this state provided “ that all courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by the due course of law, and right and justice administered without denial or delay.”
Under this provision of the constitution of 1802, and co-temporary with it, existed in. this state the common law action of replevin. The provision of the old constitution is repeated and continued in the new, and the right to the common law action of replevin has been expressly asserted and continued in the code of civil procedure.
I maintain, therefore, that there never has been a day since the inception of our state government, in which a person wrongfully deprived of his goods in this state, and withheld from him, without process in rem, or against him, had not the right to this action of replevin for its recovery. If, therefore, it could be shown, as I think it can not, that, section 428 of the code is entirely inconsistent with section 175, securing the right to the common law action of replevin, I should find myself constrained to hold that section 428 should give way to section 175, and to the constitution, rather than the incongruous innovation so expressed by section 428, should overthrown not only the old common law action of replevin expressed by section 175, but the provisions of the constitution referred to.
Nor am I able to perceive either the convenience or reasonableness of the conclusions, that the claimant’s right to his goods in law ceases and becomes extinct as against the sheriff, but remains in full force against every bona fide purchaser at sheriff sale.
*124 It is said that the plaintiff in this case, can not be permitted to hold the property as against the sheriff, that it is the duty of the sheriff to proceed and sell,' and receive the full price of the property from the purchasers; and that then the plaintiff will be perfectly free to replevy the goods from such purchasers, or to again recover their value. This, then, is to be the practice in future. The sheriff, having an execution against A., by mistake, levies on the store of goods of B. B. asserts title. The sheriff avails himself of the claimant law. The goods are adjudged to belong to B., but by the indemnity of the plaintiff in execution, the sheriff is prohibited returning the goods to their owner. The owner is prohibited replevying the store of goods from the sheriff. But when the goods are sold by the sheriff to honest purchasers for a full consideration — perhaps' five hundred different purchasers ; why then the original owner may bring replevin, or other suits against each and all of said honest purchasers, and recover from them the property, or its full value. To say nothing of the great multiplicity of actions — consequent upon this holding — if this rule is not known it works a fraud upon purchasers at such judicial sale. If it is known it will result in a ruinous sacrifice of the property sold; for no one could be expected, in view of a future law suit, and a possible liability to another for the property, to pay the full value of goods at a sheriff sale.
Eor the reasons herein expressed, I am unable to concur in the construction of these statutes given by the majority of the court in this case.